# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 04-7023**                                    September Term, 2005

PAUL JUNG, M.D., ET AL.,
    APPELLEES

v.

ASSOCIATION OF AMERICAN MEDICAL COLLEGES, ET AL.,
    APPELLEES

NATIONAL RESIDENT MATCHING PROGRAM,
    APPELLANT



UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

FILED JUN 1 2006

CLERK

Consolidated with 04-7138

Appeals from the United States District Court
for the District of Columbia
(No. 02cv00873)

Before: RANDOLPH and GRIFFITH, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

### JUDGMENT

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs and arguments of the parties. It is

**ORDERED and ADJUDGED** that the District Court's August 12, 2004 order and judgment be affirmed. The District Court did not err in dismissing the complaint with prejudice pursuant to Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure on the grounds that plaintiffs could "prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). We review the dismissal of a complaint *de novo*, "view[ing] the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir. 1992) (quotation marks omitted).

Paul Jung, M.D., Denise Green, M.D., and Luis Llerena, M.D., ("plaintiffs") brought suit in May 2002 against a number of teaching hospitals, medical schools, and non-profit associations (collectively, "defendants") involved in graduate medical education, challenging the way medical students are assigned to residency programs by one of the defendants, the National Resident Matching Program ("Matching Program"). The single-count complaint alleged that defendants participated in a conspiracy, in violation of the Sherman Act, 15 U.S.C. § 1, to "illegally restrain competition in the market for resident physician services" by "(a) stabilizing wages below competitive levels by exchanging competitively sensitive information regarding resident physician compensation and other terms of employment; (b) eliminating competition in the recruitment and employment of resident physicians by assigning prospective resident physician employees to positions through the National Resident Matching Program . . . ; and (c) establishing and complying with anticompetitive and accreditation standards and requirements." Compl. in 02-0873 at 5-6.

On April 10, 2004, the Pension Funding Equity Act of 2004, Pub. L. No. 108-218, 118 Stat. 596 (2004) (the "Act"), became law. Section 207 of the Act, 15 U.S.C. § 37b, not only exempts "graduate medical education residency matching program[s]" from antitrust laws, but it also bars evidence of any participation in such programs in support of a claim in federal court that antitrust laws have been violated, id. § 37b(b)(2). A savings clause provides that Section 207 does not exempt from antitrust laws "any agreement on the part of 2 or more graduate medical education programs to fix the amount of the stipend or other benefits received by students participating in such programs," id. § 37b(b)(3). By its express terms, Section 207 applies to suits pending when it became law. Id. § 37b(c).

Within days of enactment, defendants moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c). On August 12, 2004, the District Court granted the motion and dismissed the complaint with prejudice, holding that plaintiffs' claim relied entirely upon the Matching Program and was, therefore, barred by Section 207.

We affirm the District Court. The Matching Program is the basis for plaintiffs' complaint, and it falls squarely within both the exemption and bar of Section 207. The Act defines the term "graduate medical education resident matching program" by reference to the very program at issue in the complaint: "the National Resident Matching Program." 15 U.S.C. § 37b(b)(1)(C). It is hard to imagine a more precise fit between the language of a statute and a lawsuit. Plaintiffs attempt to recast the allegations of the complaint as a price-fixing scheme independent of the Matching Program so that they can claim the protection of the savings clause, id. § 37b(b)(3). They argue that the savings clause permits the use of evidence of participation in the Matching Program in a price-fixing case. We agree with the District Court that the complaint's allegations are inextricably intertwined with the Matching Program and thus prohibited by Section 207. "The complaint does not allege a price-fixing conspiracy, but a single overriding integrated antitrust conspiracy with the Match as its centerpiece." Op. in 02-0873 at 15. Plaintiffs fail "to demonstrate that absent the Match allegations, the Court in fact would have

come to the same conclusion that 'a conspiracy existed.'" *Id.* at 16. We also agree that Section 207's evidentiary bar, which applies to "*any* claim or action alleging a violation of the antitrust laws," 15 U.S.C. § 37b(b)(2) (emphasis added), applies to plaintiffs' claim because the bar "forbids invocation of the Match program as evidence in any antitrust suit, including one involving allegations of price-fixing." Op. in 02-0873 at 18.

Plaintiffs' constitutional argument is likewise unavailing. They argue that Section 207 violates the separation of powers because "Congress has attempted to place a thumb on the scales in pending litigation." Pl.'s Br. in 04-7138 at 31. But Congress has done nothing more here than amend the antitrust laws by carving out a safe harbor for participation in "graduate medical education residency matching program[s]." Congress may amend substantive laws, even when doing so affects pending litigation. *See Robertson v. Seattle Audubon Soc'y*, 503 U.S. 429, 438 (1992) (upholding a statute enacted in response to pending environmental litigation because it did not "direct any particular findings of fact or applications of law, old or new," but rather amended the governing substantive law). Congress may also change laws governing how evidence may be used. *See Tot v. United States,* 319 U.S. 463, 467 (1943) ("Congress has power to prescribe what evidence is to be received in the courts of the United States."). Plaintiffs rely upon *United States v. Klein*, 80 U.S. 128 (1871), a case in which the Supreme Court struck down a statute that limited the scope of the President's pardon power in an effort to change on appeal the result of cases that had already been decided. "Whatever the precise scope of *Klein*, however, later decisions have made clear that its prohibition does not take hold when Congress 'amend[s] applicable law.'" *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218 (1995) (quoting *Seattle Audubon*, 504 U.S. at 441); *see also National Coalition to Save Our Mall v. Norton*, 269 F.3d 1092, 1096 (D.C. Cir. 2001) (declining to find separation of powers violation under *Klein* when Congress made amendment to substantive law that affected pending litigation).

Plaintiffs argue in the alternative that dismissal of their complaint should have been without prejudice. We review a dismissal with prejudice for abuse of discretion, *see United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004); *Confederate Memorial Ass'n v. Hines*, 995 F.2d 295, 298-99 (D.C. Cir. 1993), and find none here. In *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996), we held that dismissal with prejudice is warranted only when a district court determines that "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." The central premise of plaintiffs' complaint and its theory of liability turn entirely on the Matching Program. A proposed amendment advancing price-fixing claims absent the Matching Program that would survive Section 207's exemption and bar would not be "consistent with the challenged pleading." *See Firestone*, 76 F.3d at 1209. Any allegation of other facts "consistent with the challenged pleading" would necessarily involve the Matching Program and "could not possibly cure the deficiency of the complaint." *See id.* We affirm the District Court's dismissal with prejudice.

**FURTHER ORDERED** that the District Court's January 25, 2005 order denying plaintiffs' Rule 59(e) motion to alter or amend the judgment and their Rule 15(a) motion for leave to file an amended complaint be affirmed. We review denial of a Rule 59(e) motion for

abuse of discretion. *See Firestone*, 76 F.3d at 1208. We find no abuse of discretion. After their complaint was dismissed with prejudice, plaintiffs filed a Rule 59(e) motion seeking to modify the judgment and a Rule 15(a) motion to allow the filing of an amended complaint. The District Court denied plaintiffs' motions and held that the high standard for relief under Rule 59(e) had not been met. After a district court has dismissed a complaint with prejudice, a party can amend that complaint under Rule 15(a) only by first prevailing on a Rule 59(e) motion to alter or amend the judgment. *Firestone*, 76 F.3d at 1208. Although "Rule 15(a)'s liberal standard for granting leave to amend governs once the court has vacated the judgment," *Firestone*, 76 F.3d at 1208, a party "must first satisfy Rule 59(e)'s more stringent standard." *Id.* "A Rule 59(e) motion 'is discretionary' and need not be granted unless the district court finds that there is an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Id.* (citation omitted).

Here, there was no change of intervening law (Section 207 was enacted several months before the complaint was dismissed), no new evidence had become available, and the District Court's ruling contains no "clear error" and threatens no "manifest injustice." Dismissal of the complaint was warranted because it clearly falls within the range of suits Congress preempted by Section 207. As the District Court noted, "[p]laintiffs had both the time and opportunity to request leave to amend their complaint prior to the entry of judgment, but chose not to." Mem. Op. in 02-0873 at 3. "By failing to advise the court in a timely fashion—i.e., before the court ruled on the motion to dismiss"—that they were willing to amend their Complaint in light of Section 207, plaintiffs "forfeited any claim of an abuse of discretion." *See Ciralsky v. CIA*, 355 F.3d 661, 673 (D.C. Cir. 2004). Nothing in the District Court's disposition or in ours precludes future plaintiffs from pursuing price-fixing claims against those defendants or related individuals or entities that are unrelated to the Matching Program.

Because we affirm the District Court's refusal to grant the Rule 59(e) motion, we need not reach the Rule 15(a) issue. In addition, because we affirm the dismissal of the complaint, we do not reach the question of whether the District Court abused its discretion in denying the motion of the National Resident Matching Program to compel arbitration of plaintiffs' claim.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

*Per Curiam*
**FOR THE COURT:**
Mark J. Langer, Clerk

BY: Michael C. McGrail
Deputy Clerk